PEOPLES BANK & TRUST COMPANY *v.* B. J. POTTER, *et al.**

*(Nashville.*  December Term, 1927.)

Opinion filed March 31, 1928.

1. **TRUST DEED. PRIMARY LIEN. SECONDARY LIEN. RIGHTS OF PARTIES.**

The cashier of a bank who manages the details of the bank's business, and where it appears that he agreed to withhold from record a trust deed held by the bank, and assist another in procuring a loan on the same property from another, the rights of the parties under such circumstances are not governed by priority given under our recording acts, but by the recognized principles of equity and good conscience.  (Post, p. 653.)

2. **TRUST DEED. PRIOR LIEN. SECONDARY LIEN. ESTOPPEL.**

Where a bank holds an unrecorded trust deed to secure a loan, and its cashier agrees with the maker thereof to withhold same from registration until the maker can procure a loan from a third party, and allow such second loan to become a priority, and where it further appears that the trust deed securing said second loan was first recorded, but the registration contained a fatal defect, and the bank subsequently had its trust deed recorded, the bank is estopped from claiming priority.  (Post, p. 653.)

*Headnotes 1. Mortgages, 41 C. J., section 553; 2. Banks and Banking, 7 C. J., section 160.

FROM DEKALB.

Appeal from the Chancery Court of DeKalb County. —HON. W. R. OFFICER, Chancellor.

G. S. BUCKNER, for Bank.

R. L. TURNER, for defendants; THOS. G. WATKINS, J. E. DRAKE, for Jefferson Standard Life Ins. Co., and Julian Price, Trustee.

MR. JUSTICE COOK delivered the opinion of the Court.

H. A. Potter was cashier of the Peoples Bank & Trust Company. He was also an associate in the business with his brother, B. J. Potter. December 12, 1922, B. J. Potter executed to the bank a deed of trust for the purpose of securing a preexisting debt of $1500. When this deed of trust was executed it was understood between B. J. Potter and H. A. Potter, acting for the bank, that the deed would be withheld from registration and the fact of its execution suppressed, so that a loan might be obtained from the Jefferson Standard Life Insurance Company to be secured by deed of trust on the same property.

Application was made to the Jefferson Standard Life Insurance Company and through the activity of H. A. Potter it was induced to lend B. J. Potter $2,250 secured by a deed of trust on the same property as that included in the deed taken by the bank on December 12, 1922. The Insurance Company recorded its deed of trust May 22, 1923, but the register of deeds omitted to copy on the record books the description given in the deed of trust. Thereafter the deed of trust held by the bank was recorded August 2, 1923. The bank now claims a prior lien because of the defective registration of the deed of trust to the Insurance Company.

J. E. Drake was employed to make an abstract of the title to this property for the Insurance Company when

B. J. Potter applied for a loan on it. In making up the abstract Mr. Drake discovered an unreleased vendor's lien and called that fact to the attention of B. J. Potter. H. A. Potter thereupon went with the original holder of the purchase money notes who had assigned them to the bank, and caused him to enter a marginal release of the liens on the record of the register's office. The abstract then presented a clear title.

The Insurance Company had no knowledge of the existence of the deed of trust of December 12, 1922, given to secure the preexisting debt of $1500 to the bank in which was included one of the purchase money notes above referred to, the other having been paid. It was without notice of the fact that the bank, instead of the vendor, held the original purchase money notes, the lien to secure which the bank had caused the original payee to release.

The loan of $2,250, induced by the conduct of H. A. Potter was made to B. J. Potter on the faith of the deed of trust to property apparently unincumbered. After H. A. Potter in his representative capacity actively participated in the negotiations for the loan and after the loan was made, the money thus obtained from the Insurance Company was deposited in the bank and was in its control. It was thereafter applied with the knowledge and consent of the bank, to obligations owing by concerns in which H. A. and B. J. Potter were interested. To what extent the application of this fund reduced their obligations to the bank does not clearly appear.

The Chancellor in his finding of facts says that the money was used in payment of obligations of some of the companies in which H. A. and B. J. Potter were joint-

ly interested and perhaps in paying obligations to the bank.

The Court of Appeals after reviewing the facts reversed the decree of the Chancellor in which he found against the Insurance Company and found as a fact that a portion if not all of the money obtained through this loan after having been deposited in the bank, was applied in payment to either direct or indirect obligations of the Potters to the bank.

Looking to the record we are unable to say to what extent the application of the fund reduced obligations to the bank. H. A. Potter testified that the loan was procured to discharge obligations of B. J. Potter and firms in which he was interested, and B. J. Potter, that it was deposited in the bank and later applied to satisfaction of those obligations. Taking the evidence altogether though, we think it clear that some if not all of this loan inured to the benefit of the bank, at least it was applied to reduce the liability of the Potters to the bank. When that was done the bank was in possession of the unrecorded deed which its cashier, H. A. Potter, agreed should be subordinate or secondary to the deed of trust subsequently executed to the Insurance Company.

It is insisted on behalf of the bank that H. A. Potter was acting for himself and in collusion with B. J. Potter, and that the bank as principal cannot be chargeable with the responsibility of his acts so antagonistic to its rights.

H. A. Potter was acting within the scope of his authority in all these transactions. The bank had no will concerning them beyond that exercised by its cashier. The Directors left these matters to him. He managed the details of the bank's business, and in that capacity had authority to agree that the deed of trust of December

12, 1922, should be a secondary lien to that of the Insurance Company. By that agreement with B. J. Potter, made without knowledge of the Insurance Company, it was induced to make the loan, and when the proceeds of the loan came into possession of the bank it remained inert and saw them applied to other obligations, instead of as it had a right to do, applying a sufficiency of it to the satisfaction of the debt secured by the deed of trust which it had agreed to keep concealed within its vaults, in order to obtain the loan from the Insurance Company.

(1) The authority of the bank and the authority of H. A. Potter cannot be distinguished when we consider this transaction in the light of all the facts and circumstances. Potter, an agent of the bank, was authorized to do every thing that he did and his corporate principle was chargeable with knowledge of his acts. *Smith* v. *Bank,* 132 Tenn., 147.

The bank had no will but its cashier's will. It acted through him. The rights of the parties under these circumstances are not governed by priority given under our recording acts, but by recognized principles of equity and good conscience. The bank cannot be permitted to accept the benefit of the authorized acts of its agent insofar as such acts inure to its benefit, and then repudiate his agency in respect to other parts of the transaction.

(2) It would be difficult to conceive a case that so strongly raised the doctrine of estoppel, in order to accomplish the intention of the parties. The Court of Appeals reversed the decree of the Chancellor and held that the bank was estopped to assert a prior lien under the deed of trust of December 12, and we concur in that conclusion.

In conformity with the opinion of the Court of Appeals the cause is remanded to the Chancery Court of DeKalb County for further proceedings, including the matter of additional compensation claimed by counsel for both parties. The costs of the appeal will be adjudged against the complainant bank. Other costs will be adjudged by the Chancellor after remand.