HERBERT PEARSON, Receiver, v. SOUTHALL BROTHERS.

Middle Section. April 12, 1930.

Wallace J. Smith, of Franklin, for appellant.
Wirt Courtney, of Franklin, for appellees.

DeWITT, J.  The receiver of the National Bank of Franklin has appealed from the decree denying recovery of Southall Brothers, as makers of a promissory note for $3606, dated December 31, 1924, payable to the order of said Bank.

The defendants admitted the execution of the note, but alleged that E. E. Green, the cashier of the Bank, was indebted to them for about $4067, exclusive of interest, for lumber and other materials; that they owed him about $3300 for timber and about $300 on some notes held by him, secured by lien on land previously purchased by them; that at Green's request they gave him the note for $3606 and he was given time to calculate the interest on the items of his indebtedness. They alleged that if their note was made payable to the Bank, it was fraudulently done; that it was agreed with Green that the note was to be kept and held by him; that at the maturity of the note, June 30, 1925, they went to Green and made a "full and final settlement in so far as said note was concerned;" that then Green claimed that the note was his own, told them that he was marking it paid and canceled and at his request they gave him credit for the amount of said note on their account against him. They pleaded that if Green at any time transferred the note to the Bank, it was fraudulently done; that the Bank did not become a bona fide owner and holder, because the knowledge of Green was imputable to the Bank. They alleged that the endorsements on the note, to-wit, "Extended to Oct. 1st, '25. Int. pd. to that date, 8/8/'25. Extended to Oct. 30, 1926. Nat'l. Bank of Franklin, demand, notice and protest waived, E. E. Green, cashier," were made by E. E. Green or some other

agent and employee of said Bank fraudulently, without the knowledge and consent of defendants, as they believed that said note had been duly cancelled in the hands of E. E. Green. They further alleged that said endorsements, not being in accord with banking practice, were alone sufficient to put said Bank upon notice that said note, was not a subsisting obligation and not an asset of said Bank.

The Chancellor held that the Bank was not a bona fide holder and innocent purchaser because the note had been paid to Green at maturity, that this was a payment to the Bank, the knowledge of Green being treated as the knowledge of the Bank.

The note sued on was found among the assets of the Bank when the receiver took charge. On January 9, 1925, it was transferred, by sale or pledge, to the Fourth and First National Bank of Nashville. On October 30, 1925, it was delivered back to the National Bank of Franklin. Therefore, on June 30, 1925, when the settlement was agreed to between Green and the defendants, and Green represented that he held the note and would cancel it, the note was in the possession of the Fourth and First National Bank; but there is no evidence that this was known to the defendants.

The evidence shows that when the note was given, Green owed Southall Brothers $4000 or more, and they owed him the amount of this note. It also shows that Green made the endorsements purporting to extend the time of payment and paid the interest to the Bank, without the knowledge or consent of the defendants. They supposed that the note was cancelled, although it was not delivered to them. Mr. Green testified that the note became the property of the National Bank of Franklin and he intended to pay it as a part of his obligation to Southall Brothers.

It appears from the records of the Bank, which are undisputed, that Southall Brothers had owed four notes aggregating, with interest, the sum of $3605.85; that one of these notes, being for $1060, dated January 14, 1924, due six months after date, was made payable to the order of the National Bank of Franklin; that two other notes, being for $150 each, dated March 25, 1924, due in ninety days, were made payable to the order of R. S. Owen and endorsed by him; that another note, being for $2021.80, dated July 21, 1923, due in one year, was made payable to the order of E. E. Green and endorsed by him; that the note for $1060 and the note for $2021.80 also bore the endorsement of the National Bank of Franklin; and that the note for $1060 also bore the following endorsement:

"Collect and account to Fourth and First National Bank of Nashville, Tenn. Report by No. 38202. R. E. Williamson, Cashier."

These notes were filed as exhibits to the testimony of W. A. Southall. He testified that the notes for $1060 and $2021.80 were given for timber purchased from Mr. Green and the notes for $150 each were given to R. S. Owen for advertising in his newspaper. These statements are accepted as true. Mr. Southall testified that the Owen notes were held by Green and used by him in making the settlement. The records of the Bank show that all of these notes were carried on the books of the Bank as its property. They had been delivered to the Bank by Green and he got credit for the face value of them.

It is clear that the note for $3606 was given in renewal of the other notes; that Southall Brothers relied upon Green's promise to credit them with this amount and pay the balance of his debt; and that instead of doing this Green placed the note with the assets of the Bank, in the same way that he had used the previous notes; and that, although the note sued on was made payable to the Bank, Southall Brothers believed either that Green held it or would pay it and did pay it on June 30, 1925. The two defenses relied on are; (1) that the note was voided by the endorsements showing extensions of time of payment—material alterations; (2) that the Bank is not a bona fide owner and holder, as the knowledge of Green of the nature of the transaction is imputable to the Bank.

Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent endorsers. But where an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof, according to its original tenor. Shann. Code, sec. 3516a132.

Any alteration which changes the time or place of payment, or which makes any other change or addition which alters the effect of the instrument in any respect, is a material alteration. Sec. 3516a133.

The endorsements claimed as such alterations were manifestly made with the fraudulent intent to conceal from the makers the fact that the note had not been cancelled, but had been transferred, and to make it appear to the Bank or its auditors that the interest had been paid by the makers and the note was not past due. The rule of Bank v. Yowell, 155 Tenn., 430, 294 S. W., 1101, that in

the absence of fraud recovery could be had upon the original obligation, would in no view apply.

But the endorsements did not affect the original contract, they merely purported to evidence another contract. They constituted no part of the note. It is true that courts have held that under certain circumstances memoranda made on the back or in the margin of a note may constitute part of the contract; but we are aware of no authority holding a notation of the character involved in this case to be a part of the contract, or the addition thereof to be a material alteration. The endorsements were not made for the purpose of changing the original contract as signed. In Tennessee there is no reported case directly in point, but in the analogous case of Eaton v. Delay, 32 N. D., 328, 155 N. W., 644, L. R. A., 1916D, 528, the subject is ably discussed and many decisions reviewed. The note was not voided by the memoranda endorsed on it.

There is no proof that the name of the payee in the face of the note was altered after its execution. The payee named is the National Bank of Franklin. The note on its face is an unconditional promise to pay to the order of that bank. The defendants do not explain this fact, although W. A. Southall, who executed the note, testified that this was a transaction with Green and not with the Bank. On the other hand, Green was representing the Bank as its cashier, but was ostensibly dealing in his individual capacity with the defendants in procuring the note as an evidence of his entire claim against them, to be satisfied by cancellation pro tanto of their account against him. As between him and them the note was a memorandum. It could not have been enforced except by a set-off. Now as to their note, payable as it is, to the order of the Bank, the defendants insist that the Bank was not an innocent purchaser because its sole agent, Green, fraudulently delivered it when no recovery of money could be had upon it.

The rule imputing to a bank the knowledge of its officer is applied where he solely had the knowledge and his interest was antagonistic to the bank. In such case there is no room for the presumption that the agent would not communicate his knowledge to his principal when it is to his interest to conceal it. Smith v. Bank, 132 Tenn., 147, 177 S. W., 72; Bank & Trust Co. v. Potter, 156 Tenn., 649, 4 S. W. (2d), 341. In the transactions in question here, Green was acting within the scope of his authority as cashier, and was the sole actor for the Bank. The receiver of the Bank claims a right of recovery through Green's agency. He accepts the act of agency and seeks to disclaim the imputation of notice by reason of the agency. If the note were payable to the

order of Green, the rule of the above mentioned cases, would easily apply. The Bank, or its receiver, could not ratify the act of Green and disaffirm the fraud by means of which it was accomplished. Can we apply this rule when the note was made payable to the Bank?

The Bank acted solely through its cashier. He actually represented it while purporting to deal as an individual with the defendants. The Bank had placed this within his power. He knew that it was fraudulent for him to transfer the notes to the Bank when he owed the sum of them to the makers; and the law makes this the knowledge of the Bank. This was true as to the note given in renewal. The legal identity, the oneness in action and knowledge, of the agent and principal, gave to the Bank knowledge, when it took the notes that the makers could only be made to pay them by credit upon Green's debt to them. The makers, although they made the renewal note payable to the Bank, had a right to look to the Bank to protect them from loss by payment otherwise than by the mere credit.

Again, upon the maturity of the renewal note, the Bank had the same imputed knowledge of the agreement of settlement—knowledge that Green induced the defendants to cancel his obligation by the amount of the note in consideration of the cancellation of the note. As in legal contemplation he was the Bank in these transactions, it could not visit upon these defendants the consequences of his unfaithfulness. It could not be allowed to rely upon any want of authority in him. It could not claim the benefit of his agency and repudiate his wrongful conduct. The fact that when the agreement of settlement was made the note was in the hands of the Fourth and First National Bank cannot alter these conclusions. The rule that the purchaser of negotiable paper after maturity from a holder in due course takes it free of defenses not available against his transferor would not apply in favor of the transferor. Such transferor must not have been a party to any fraud or illegality affecting the instrument. Shann. Code, sec. 3516a66. When the instrument is re-transferred to such party, he occupies no higher status than he previously had. Brannan's Negotiable Instruments Law (4 Ed.), p. 511, and cases cited.

All of the assignments of error are overruled and the decree of the Chancery Court is affirmed. The costs of the appeal will be adjudged against the receiver and the surety on his appeal bond.

Faw, P. J., and Crownover, J., concur.