H. L. GRIGSBY, Receiver, v. R. F. LONG, Trustee.

Middle Section.   August 15, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

True & Dorsey, of Springfield, for appellant, Receiver.
R. L. Peck, of Springfield, for appellee, Long.

464

CROWNOVER, J. This was a suit by the Receiver of the Peoples Bank of Springfield to recover of R. F. Long as trustee and individually the amount of two notes of $5000 each, with interest from July 3, 1923, executed by R. F. Long as trustee of his father, E. B. Long, to said bank, for which notes he substituted two notes of $5000 and $5300 executed by said E. B. Long, which latter notes were worthless, as said E. B. Long was insolvent, on the theory that (1) he was liable as trustee because he received $6323.13 as trustee and $3200 individually; (2) he was liable individually (a) because he received the money, and (b) because he permitted the dissipation of $10,000 of the assets of said bank.

R. F. Long answered that at the suggestion of H. T. Stratton, president of said Peoples Bank, he executed the said notes as trustee under a spendthrift trust created by his mother's will for his father, E. B. Long, who was insolvent, and substituted them for notes amounting to $10,000 held by said bank against E. J. Edwards & Co., a copartnership, of which his father had been a member, and which firm was also insolvent, in order to make it appear to the bank examiner that the Edwards & Co. indebtedness had been reduced. He denied that he received either individually or as trustee any money or consideration for said notes and pleaded failure of consideration, want of authority as trustee to execute the notes, and that the bank lost nothing by the transaction as the Edwards & Co. notes were worthless and the substitution of the two E. B. Long notes, made at the suggestion of the bank's president, Stratton, did not impair or further diminish the assets of the bank as both E. B. Long and Edwards & Co. were insolvent; and he further denied all liability.

The Chancellor held that the allegations of the bill were not sustained by the proof, and he dismissed the bill at complainant's cost, from which decree complainant has appealed and has assigned two errors, which, when summarized, are:

(1) The Chancellor erred in not rendering a decree against R. F. Long as trustee for $6323.13 with interest, received by his trust estate on December 17, 1923, and against him individually for the remainder of the $10,000 with interest, received by him individually, because he should not be allowed to retain the money received and repudiate the notes.

(2) The Chancellor erred in dismissing the bill and in not rendering a decree against R. F. Long individually for the amount of the two notes, if he was not liable as trustee, as the fact that he signed the notes as trustee without authority would render him liable individually even though the notes were for accommodation.

It will thus be seen that the assignments raise two questions: (1) That R. F. Long was liable as trustee because the trust estate received $6323.13, and he was liable individually for the balance because he individually received the balance of the proceeds. (2) That R. F. Long was individually liable for both notes if he exceeded his authority as trustee in the execution of the notes for accommodation.

In July, 1923, the Peoples Bank of Springfield, Tennessee, held many notes against individuals, firms and corporations, several of which were probably insolvent, and the bank examiner warned the president and other officers that the line of credits must be reduced.

Accordingly, on July 3, 1923, R. F. Long executed, as trustee, two notes of $5000 each, due in six months, to said bank and substituted them for notes of E. J. Edwards & Co. amounting to $10,000, which notes were held by the bank until August 14, 1923, when H. T. Stratton, president of said bank, deposited in the bank six notes, totaling $10,655.35, and had the same entered on the books of the bank, and then had charged off the two $5000 Long, trustee, notes and took credit for the difference. He then placed these two trustees notes in the bank and had them carried as cash items and took credit on his individual account for $10,000.

On December 18, 1923, the Peoples Bank drew a draft for $10,000 on the Lebanon National Bank through the American National Bank of Nashville, which draft was paid.

On December 17, 1923, the account of R. F. Long, trustee, in the Peoples Bank, was credited with $6323.13 and Long's individual account with $3200.

In January, 1924, after the bank examiner had examined the Peoples Bank, and its books showed that the Peoples Bank owed a balance to the Lebanon Bank, Stratton says that he immediately sent the two Long, trustee, notes to the Lebanon National Bank and told them to credit the Peoples Bank with the same.

The records of the Lebanon National Bank show that on January 11, 1924, the Peoples Bank was credited with $10,000 and that that bank held the two Long, trustee, notes. But its books show that on January 14th the $10,000 was again charged to the Peoples Bank and the two notes were returned to the Peoples Bank.

On July 8, 1924, the two notes were entered on the note register of the Peoples Bank for $5000 and $5300, dated July 3, 1924, signed E. B. Long, and the Lebanon National Bank was credited with $10,000 and interest $300.

These two E. B. Long notes were substituted for the two R. F. Long, trustee, notes.

The weight of the evidence is that these two trustee notes first appeared in the bank on July 3, 1923, in substitution for the E. J. Edwards & Co. notes, as the result of an agreement between the president, Stratton, and R. F. Long, cashier, to reduce the Edwards indebtedness in order to satisfy the bank examiner.

Stratton first testified that the first appearance of the notes in the bank was when R. F. Long told him that he needed $10,000 and didn't want his notes to appear in the Peoples Bank, so he, Stratton, authorized him to make a draft on the Lebanon National Bank. This would have made them appear first on December 18, 1923, instead of July 3, 1923. However, Stratton afterwards contradicts this testimony, when he testified:

"R. F. Long came to me and said he needed $10,000 and would give me two trustee notes for $5,000 each and he had rather they would not be entered up in the Peoples Bank so I told him to give me the notes and he could make draft on the Lebanon National Bank for the same. I held the trustee notes until January 11th, I believe it was, anyway the Bank Examiners came in and of course our books showed we had a balance with them and I immediately sent the notes over and told them to credit the Peoples Bank with same.

"Q. Were these notes returned to you? A. Yes and our account debited back with $10,000. I held them until July 8th, and handed them to Forrest (Long) and told him to enter them up and credit the Lebanon National Bank."

. . . . . .

"Q. When did he as such trustee borrow $10,000 from the Peoples Bank? A. On July 3rd, I believe it was in 1923, he made two trustee notes for $5000 and two S. R. Russell notes for $5000 and I think he took up E. J. Edwards & Co. paper with that money.

. . . . . .

"When he handed me these notes some months prior to the time he did not want them to appear in the Peoples Bank and asked me to float them elsewhere. I floated these notes with the Lebanon National Bank and their account was charged with a like amount. Later the Lebanon National Bank debited our account with these two notes and returned them to me and I carried them in that form until July 8th, when I handed the two notes in question to Forrest (Long) and asked him to enter them up and credit the Lebanon National Bank with $10,000.

"Q. You stated a moment ago that these notes were executed in July, 1923. A. No, I did not.

"Q. Well, they are the only two $5000 are they not? A. Only two that I know of, except renewals.

"Q. But the point I am making is this, you swore a few moments ago that these two notes were executed July, 1923? A. No, not the two that I handed him on July 8th.

"Q. July 8th, what year? A. 1924.

. . . . . .

"He made the two $5,000 notes July 3, 1923. On August 14th he took those two notes out and credited loans and I feel sure that they were carried as cash in the bank and entered in December when he handed them to me to make a draft on Lebanon National Bank for $10,000.

"Q. Then as I understand you these notes were first negotiated in the Peoples Bank in July, 1923. The two trustee notes which you say he afterwards took out on August 14, 1923? A. Yes.

"Q. And you have further stated that Mr. Long, Forrest Long, did not want the books to show anything about the transaction. I now ask you if these notes were not entered on the Note Register the first day of the transaction just the same as any other notes that were negotiated at the bank? A. Yes, but on August 14th they were credited off.

. . . . . .

"On July 8, 1924, the Lebanon National Bank was credited with $10,000 and interest was paid for $300."

On August 14, 1923, the two R. F. Long, trustee, notes which had been credited to the Edwards account were charged off and six other notes substituted for them.

R. F. Long testified as to this substitution:

"We found the deposit slips and checked the records of that day and could not locate any items that would take care of this on them; so we began with loan records on Journal 22, pages 84 and 85 and looked up every loan, Mr. Bryant checking off all renewals that appeared on that day and after we got through checking back, we had two $5000 loans not checked, on credit side, and had a list of unchecked notes on the debit side. The total debit of unchecked loans on that day was $10,535, together with $233.33 of discount which showed a rebate on two notes of R. F. Long, Trustee, made $10,768.35, or a discrepancy of three cents, on the credit side, $10,000 with a $113 interest credit on the bank account and $655.35 to the credit of H. T. Stratton, which showed on the deposit ticket $233.35 rebate on same account, together with accrued interest on the note, which showed that was the only transaction on that day that would take care of those items."

468

W. P. Bryant, cashier of the First National Bank of Springfield, testified:

"I consulted the records of the bank and found that six notes entered in the bank total $10,655.35, or $655.35 more than R. F. Long, Trustee, notes, which were taken out, these six notes plus the refund interest makes up the $10,655.35. On further examination of the deposits, I find H. T. Stratton's personal account credited $10,655.35. These items would indicate that the six notes just mentioned, plus the credit, that Mr. Stratton's account took care of the R. F. Long, Trustee, notes.

"Q. As a matter of fact, do not the debit and credit features of said items each figure up and amount to exactly the same figures, or $10,768.35? A. Within two cents of it, just two cents discrepancy.

"Q. And that occurs in the item of deposit of Mr. Stratton? A. Yes, sir. It is $233.35 and entered on Journal as $233.33.

"Q. Mr. Bryant from the books and your examination thereof, is there any other way to explain this transaction other than you have just explained above? A. I don't think so, I think that's a correct explanation."

The foregoing explanation is uncontradicted.

Long testified that the entry of these notes was made in the handwriting of Mrs. Sprouse, then Miss Wilson, a clerk in the bank, and that he did not know at the time what notes were substituted for his.

The financial standing of those who had executed the six notes was not testified to and it does not appear what became of them.

R. F. Long further testified that on December 17, 1923, R. L. Bell, executor of the estate of J. G. Woodard, deceased, executed a check for $6323.13, payable to Long's sisters, as their interest in said estate; that his father, E. B. Long, was indebted to the estate of J. G. Woodard in the sum of $5929.54; that he borrowed from his sisters this amount of $6323.13 and deposited it in his account as trustee; then issued a check to the executor for $5929.54, the amount owed the estate by E. B. Long. He says that the amount deposited in his individual account that day, $3200, was made up of $1907.71 which was his interest collected from the Woodard estate, and $1300 from some other source; that the $1300 was borrowed by him to add to the $1900 that he might purchase bank stock from the Woodard estate. R. F. Long is not contradicted.

Stratton had previously testified that on this date R. F. Long borrowed $10,000 by making a draft on the Lebanon National Bank, and he files the bank's books showing these two deposits as proof of his statement.

It is admitted by Stratton that there was a settlement on that date of the Woodard estate by Bell, executor, in which estate the Longs were interested, and a number of checks exchanged.

Bryant testified that the records of the Peoples Bank and the Lebanon National Bank do not agree about the drafts. Bryant testified as follows:

"On June 30, 1924, the records of Lebanon National Bank show the Peoples Bank account closed out by charging off $6000. No later entry appears on the records of said Lebanon National Bank. On July 8, 1924, the records of the Peoples Bank show that this account was closed out on July 8th by a credit of $10,000. The records of the Lebanon National Bank don't show a credit balance of as much as $10,000 for some time previous to that.

.   .   .   .   .   .

"The Peoples Bank records show that the two E. B. Long notes came into the Bank on July 8, 1924, that they did not take the place of any notes then appearing on the books of the Bank. The only corresponding credit entered anywhere is the $10,000 to the account of Lebanon National Bank, Lebanon, Tennessee."

On July 8, 1924, the two E. B. Long notes were substituted for the two R. F. Long, trustee, notes and the E. B. Long notes entered on the books of the bank and the Lebanon National Bank credited with $10,000. This was done after the notes had been approved by the Finance Committee on July 7, 1924.

Bryant testified:

"The two notes came into the bank and no credit was made for $10,000 anywhere on the books of the bank except to the Lebanon National Bank, in other words, the notes came in and nobody got any credit for them on the books of the bank. Mr. Long did not and there were no notes taken out and no renewal notes taken up by this $10,000. But there was a credit to the Lebanon National Bank for $10,000 that can't be accounted for by any other item except these notes."

H. B. Smith, a bookkeeper and at one time assistant cashier of the Peoples Bank, testified:

"They would exchange drafts that would never be entered on the books of the bank here, that is, Mr. Hale would draw a draft on the bank here and Mr. Stratton would put the draft here in the bank on him and there would never be any record shown of it, except remittance lists to and from the banks."

The books of the banks were not introduced in evidence and we haven't had an opportunity to inspect them but must rely on the testimony of the parties and bookkeepers who have examined the

books of the banks. Seemingly the case has not been developed 'to the extent that it should have been by one side or the other. Neither the employees of the Lebanon National Bank or other people who knew anything about the transactions with that bank, were introduced, nor was E. B. Long, Long's sisters, or the executor of J. G. Woodard's estate introduced about the Woodard settlement.

But after an examination of the record we are of the opinion that the assignments of errors must be overruled and the decree of the Chancellor affirmed.

We are of the opinion that R. F. Long did not receive any money or other consideration, either as trustee or individually, from this transaction. But we do think the books show that Stratton received $10,000 on these notes in the transaction of August 14, 1923, as he states that the Long notes after being charged off were carried as cash items, and he is the only one who received a credit of $10,000 at that time. The notes were evidently in the possession of the bank after that time and were afterwards sent to Lebanon National Bank by the Peoples Bank without any other entries having been made on the books of the Peoples Bank.

Long's explanation of where he got the money that was placed to his credit as trustee and individually on December 17th, is reasonable, and is not contradicted, and in view of the fact that Stratton had gotten credit for $10,000 before that time, we do not think that the evidence shows that Long received any of the proceeds of the Lebanon draft, and there is no proof of any entries on the books of the Peoples Bank showing that he received any of the proceeds of that draft. The $10,000 draft having been made through the American National Bank on the Lebanon National Bank, if Long had taken the proceeds of same, the books would have been out of balance to that extent.

We are satisfied that Long substituted these two notes in the Peoples Bank, on July 3, 1923, for notes amounting to $10,000 of E. J. Edwards & Co., in order to satisfy the bank examiner; and that he received nothing in return. The proof shows that E. J. Edwards & Co. were insolvent and that its paper was worthless; hence the bank lost nothing by that transaction, and the plea of failure of consideration must be sustained.

There can be no recovery of damages unless the bank suffered damages by the transaction. 7 C. J., 568; Wallace v. Bank, 89 Tenn., 630, 15 S. W., 448; First State Bank of Nortonsville v. Morton (Ky.), 142 S. W., 694.

It results that the first assignment of error must be overruled.

The second assignment, that the Chancellor erred in not holding R. F. Long individually liable for the notes, where he exceeded

his authority as trustee in the execution of the notes, is not well made and must be overruled.

We are of the opinion that R. F. Long had no authority under the will of his mother to execute these notes as trustee without consideration so as to bind the trust estate, for the reason that this is a spendthrift trust which provided that the property should not be liable for the debts of his father, E. B. Long. Jourolman v. Massengill, 86 Tenn., 81, 5 S. W., 719; Henson v. Wright, 88 Tenn., 501, 12 S. W., 1035.

But these notes were taken by the bank with full knowledge of his lack of authority to execute them. Long says that he executed the notes and substituted them for the E. J. Edwards & Co. notes. Stratton, the president, states that Long did this on his own initiative and that he knew nothing about it; hence Long, as cashier, was the sole actor and his knowledge was the knowledge of the bank. See Herbert Pearson, Receiver, v. Southall Bros., 12 Tenn. App., 182; Smith v. Bank, 132 Tenn., 147, 177 S. W., 72; Bank & Trust Co. v. Potter, 156 Tenn., 649, 4 S. W. (2d), 341.

Where a note is signed by one as trustee it is constructive knowledge of a trust, and is sufficient to put a purchaser on inquiry as to his right to execute or to transfer the instrument. Ford v. Brown, 114 Tenn., 467, 88 S. W., 1036; 5 Uniform Laws Annotated, 375; Opinion of Supreme Court by Judge Hall in the case of Harpeth National Bank v. Jeff Morris et al., Williamson County Equity, filed December 12, 1925, at Nashville.

Under the negotiable instruments statute, section 20, where a trustee signs on behalf of a disclosed principal or in a representative capacity, he is not personally liable, if he was duly authorized to sign it, or if the holder takes with full knowledge of his lack of authority. 5 Uniform Laws Annotated, 124-5; Wilson v. Zion Church, 138 Tenn., 405, 198 S. W., 244; Eliason State Bank v. Montevideo Baseball Assoc., 160 Minn., 341, 200 N. W., 300.

There is nothing in the record to show whether the principal or the trust estate was disclosed in the face of the two notes, other than that they were signed by "R. F. Long, Trustee," but the bank was affected with full knowledge connected with the trust estate. It was affected with all knowledge possessed by its cashier who was the sole actor.

Where a note is signed by a person as trustee without disclosing the principal but all the facts about the trust estate are verbally disclosed to the payee of the note, the trustee is not personally liable. American Trust Co. v. Canevin, 184 Fed., 657; Kerby v. Ruegamer, 95 N. Y. S., 408; Megowan v. Peterson, 173 N. Y., 1, 65 N. E., 738; 5 Uniform Laws Annotated, 127.

Hence it results that Long is not individually liable on the ground that he exceeded his authority in signing the notes as trustee, and second assignment of error must therefore be overruled.

Taking the whole record, we are of the opinion that the bank lost nothing in the substitution of the trustee's notes for the E. J. Edwards & Co. notes, as that company was insolvent, and the bank did not lose anything when Long as cashier substituted E. B. Long's two notes for the trustee's notes, for the reason that he, as trustee and individually, was not liable to the bank on the trustee's notes. If the bank lost anything, it was through the substitution of the six notes by Stratton for the trustee notes, and the manipulation of Stratton's account thereafter, but this was done without Long's knowledge. He testified that he knew nothing about that transaction, and he is not contradicted. Where the action is brought by the corporation or a stockholder the defendant is not presumed to have knowledge of all that is shown by the books of the bank. 21 Am. & Eng. Ency. of Law (2 Ed.), 896; Wallace v. Lincoln Savings Bank, supra.

It results that the assignments of errors must be overruled and the decree of the Chancellor dismissing the bill must be affirmed. The cost of the cause including the cost of the appeal is adjudged against the appellant Receiver and the sureties on his appeal bond, for which execution may issue.

## OPINION ON PETITION TO REHEAR.

This case is again before us on petition for a rehearing, supported by an agreement of counsel in which it was agreed that there was a mistake in the deposition of W. P. Bryant as copied into the record wherein he was made to state that H. T. Stratton's personal or individual deposit account in the said Peoples Bank was, on August 14, 1923, credited with $10,655.35 when as a matter of fact his deposit account on said date was credited with only $655.35, and that said statement was an error; from which it is insisted that Stratton did not receive the $10,000 deposit but that Long received it, and therefore it is asked that our former decree be set aside and that a decree be rendered against Long for the $10,000.

We have again examined the record, taking ino consideration said agreement, and have arrived at the conclusion that it is immaterial whether Stratton received the $10,000 proceeds of said R. F. Long, Trustee, notes, as there is no issue as to whether Stratton received the proceeds of said notes, and our original opinion, at page nine, will be amended so as to state that we do not decide whether Stratton received the $10,000, as that question is immaterial, but we are of the opinion, as heretofore decided, that R. F.

Long did not individually or as trustee receive any of the proceeds of or derive any benefit from the two R. F. Long, trustee, notes; hence the petition to rehear is sustained only to the extent above stated but in all other respects is denied.

Faw, P. J., and DeWitt, J., concur.