Billy VINSON, d/b/a Vinson Insurance Agency, Petitioner,

v.

Jack MILLS, Respondent.

Supreme Court of Tennessee.

Dec. 1, 1975.

Paul Simpson, Selmer, for petitioner.

Terry Abernathy, Selmer, for respondent.

## OPINION

HARBISON, Justice.

This action was instituted in the General Sessions Court of McNairy County by a fire insurance broker, petitioner here, to recover the first annual premium on a policy of fire insurance issued to the respondent as owner of the insured premises, with a standard mortgage clause showing loss payable to the holder of a mortgage against the property.

Recovery was awarded to the plaintiff in the General Sessions Court, and the case was appealed to the Circuit Court of McNairy County where it was heard de novo by the circuit judge sitting without a jury. The Circuit Court affirmed the judgment of the General Sessions Court and awarded recovery to the petitioner.

On appeal, the Court of Appeals reversed, holding that the respondent was not liable for the premium upon the ground that the proof showed that he was a minor at the time of contracting. The Court of Appeals, in its opinion, discussed issues of procedure in civil actions appealed from the general sessions court to the circuit court which we deemed to be of general significance, and accordingly certiorari was granted.

Turning first to the substantive issues in the case, we are of the opinion that the Court of Appeals was in error and that the judgment of the Circuit Court should be reinstated.

The case is here on a narrative bill of exceptions, which is extremely meager, and which leaves unanswered a number of pertinent questions. Basically, however, it appears that the petitioner is in the general insurance business in Adamsville, Tennessee, operating an insurance agency. There seems to be no question but that the respondent initiated the negotiations which led to the issuance of the policy in question,

and that he contacted petitioner with reference to obtaining insurance upon a commercial building recently constructed. The petitioner testified that respondent referred to the building as being his property. Respondent was engaged in business in the community, was known to the petitioner, and petitioner made no further inquiry from the respondent as to the actual manner in which title to the premises was held. Petitioner caused a policy to be issued, showing respondent as the owner, with a loss payable clause to a bank which held a mortgage on the property. Both parties, according to the summary of their testimony in the record, recognized that the exact amount of the premium could not be ascertained at the inception of coverage, and both testified that petitioner stated that he could issue a binder without any payment being required at that time. This was done, and the agent advanced the first annual premium, in the amount of $580.30, to recover which this suit was brought.

Both parties admit that after the policy had been issued, petitioner demanded payment from respondent. Both state that respondent indicated that he would take the matter up with his father. At no time, according to the bill of exceptions, did respondent deny liability for the premium. According to the testimony of petitioner, he himself also took the matter up with the father of respondent, and the father promised to discuss the matter with respondent. Neither of them ever paid any premium to the agent, however, and the policy was cancelled after the first year.

Respondent denied having represented the property in question as being his own, although he admitted that he made the contact with petitioner and did not advise petitioner accurately as to the ownership. It was the testimony of respondent that the building was actually owned by his father, and respondent was simply acting on his father's behalf in requesting the issuance of insurance. The Court of Appeals correctly pointed out that this conflict in the testimony was resolved in favor of the petitioner

by the trial court, so that as the case reaches us it must be assumed that the respondent did represent himself to be the owner of the premises.

A further conflict between the parties concerns a tender of a copy of the policy. Petitioner testified that he tendered a copy to the respondent some months after its issuance; respondent denied this, but again the conflict in evidence was resolved by the trial court in favor of the petitioner.

■ In denying liability, the respondent insisted that he had no insurable interest in the premises, and that therefore the policy was void, being in effect a wagering contract and violative of public policy of the state. See T.C.A. § 23–1701 et seq. It is indeed the rule in this state that where a policy of insurance had been issued to one having no insurable interest therein, the policy is void, and ordinarily the person paying the premiums thereon can recover the same from the insurer. See *Washington v. Atlanta Life Insurance Company*, 175 Tenn. 529, 136 S.W.2d 493 (1940); *Interstate Life & Accident Company v. Cook*, 19 Tenn.App. 290, 86 S.W.2d 887 (1935); *cf. Jones & Abbott v. Insurance Company*, 90 Tenn. 604, 18 S.W. 260 (1891).

■ In the present case, however, it is the testimony of both parties that the original policy was actually issued and delivered to the holder of the mortgage, with a loss payable clause in favor of the mortgagee, and there is no contention made but that the mortgage holder did have a valid indebtedness and therefore a valid insurable interest in the property. We note further that the policy contains general liability insurance coverage for personal injury and property damage, as well as providing comprehensive hazard insurance to the buildings and personal property.

On the meager information before us, had a fire loss occurred or a liability claim arisen, we doubt that the insurance company would have been permitted to deny coverage or escape its contractual obligation

upon the ground that the policy in question was a wagering contract and therefore void. If there was a technical error in the listing of the property owner, reformation of the policy to conform to the true facts might well have been possible. These are issues which cannot be decided upon the very incomplete record before us, but under all of the circumstances we are unwilling to hold that the policy was void and afforded no type of coverage to any person, so as to justify a recovery of premiums paid, within the purview of the cases above cited.

A second defense offered by respondent has to do with the statute of frauds, but the Court of Appeals correctly concluded that this defense could not be sustained. The factual disputes were resolved by the trial court in favor of the petitioner, and it therefore must be concluded that the respondent represented the property as his own, and not that of another.

■ The third defense, and one which was sustained by the Court of Appeals, is that of minority. Respondent testified that he was twenty years of age when the insurance was obtained, and there is no claim that he misrepresented his age to the agent. No inquiry was made on the subject. There is, however, further no question from this record but that the respondent did not repudiate his obligation to pay the premium within a reasonable time after attaining his majority. It is undisputed that demand was made upon him for payment of the premium several months after the policy was issued—at a time when he had attained his majority (respondent lacked less than three months of being twenty-one years of age when the policy was issued). At that time he did not deny liability, but said that he would take the matter up with his father. Also at that time, according to the testimony of petitioner, respondent was tendered a copy of the policy, and there is no testimony that he denied responsibility for its issuance.

Suit was not brought on the policy until February 1973, at which time respondent lacked only one month of attaining his twenty-fifth birthday. There is no evidence whatever in the record that at any time between his reaching the age of majority and the time of filing suit, he repudiated the contract or in any other way claimed a right to avoid his obligation by reason of his minority. Under these circumstances, it is our opinion that the respondent may not avail himself of the defense of minority, and that the Court of Appeals was in error in dismissing the suit upon that basis. See generally *Harwell Motor Co. v. Cunningham*, 47 Tenn.App. 253, 258, 337 S.W.2d 765 (1959); *Human v. Hartsell*, 24 Tenn.App. 678, 148 S.W.2d 634 (1940).

As stated previously, however, the principal reason for the grant of certiorari by this Court has to do with procedural matters. The Court of Appeals held that when a case is appealed from a general sessions court to a circuit court, the Tennessee Rules of Civil Procedure become applicable to such extent that it is necessary that the parties file written pleadings (that is, a formal complaint and a written answer) before going to trial. The Court of Appeals recognized that the Rules contain no such provisions, but concluded that the general spirit of the Rules was to abolish oral pleadings and to require more formal procedures in the circuit court than had obtained in the past.

The Court of Appeals recognized that pursuant to T.C.A. § 16–1135 (governing general sessions courts) and T.C.A. § 19–402 (governing civil actions before justices of the peace), civil actions are begun by the suing out of a warrant. The Court was of the opinion that the warrant itself, which is required to contain a minimal statement of the cause of action, would suffice for a complaint when the action reached the circuit court, but that it would be necessary for the defendant, when the case reached that court, to file a formal answer. Since no time was provided for such filing under the Rules of Civil Procedure, the Court of Appeals held that "a defendant is not re-

quired to file same until called upon to do so by Court or opposing counsel."

It is true that Rule 1 of the Tennessee Rules of Civil Procedure provides that the Rules are applicable to civil actions appealed or otherwise transferred to the circuit or chancery courts. The Rules are expressly not applicable in the general sessions court, except in those instances where that court exercises equivalent jurisdiction to circuit or chancery by virtue of a special statutory provision.

Nothing in the Rules, however, requires that the parties replead their action, reissue process or take any other retrospective step, once a case is appealed from a general sessions court to a circuit court. A special provision is contained in Rule 38.03 for the filing of a jury demand in such cases, and the time for doing so is specified.

■ It is the opinion of this Court that the Tennessee Rules of Civil Procedure are applicable, insofar as pertinent, to cases appealed to the circuit court from the general sessions court, but that the Rules do not require the filing of written pleadings, issuance of new process, or any other steps which have been completed prior to the appealing of the case to the circuit court.

T.C.A. § 19–425, which applies to general sessions courts as well as to justice of the peace courts, is still in force and effect, and it provides:

"No civil case, originating before a justice of the peace and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper; and the trial shall be de novo."

While we are in agreement with the Court of Appeals that written pleadings are more desirable than oral ones, the practice prior to the adoption of the Tennessee Rules of Civil Procedure was to have oral pleadings in the circuit court, upon appeal there from the general sessions court, unless, of course, either party relied upon a claim or defense which was required to be under oath or otherwise in written form. In such cases, of course, a written statement of the matter would probably have been necessary initially in the general sessions court or would have been supplied in the circuit court on appeal.

■ The Rules of Civil Procedure did not change the practice in regard to the pleading of appealed cases in the circuit court. The Rules are applicable to such cases, after the appeal has been docketed, only insofar as then pertinent or relevant. Certainly pretrial discovery procedures are available in the circuit court in such cases, time permitting, and the Rules governing the trial and disposition of cases in that court are also applicable. The rules governing pleadings, however, do not apply except to such extent and insofar as the trial judge may direct them to be applied in given cases, in carrying out the provisions of T.C.A. § 19–425 or in the disposition of his docket under any applicable local rules.

In accordance with all of the foregoing, the judgment of the Court of Appeals is reversed and the judgment of the circuit court is reinstated in this case, at the cost of respondent.

FONES, C. J., COOPER and HENRY, JJ., and DYER, Special Justice, concur.