NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0183n.06
Filed: March 10, 2005

No. 03-6528

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BFM LEASING COMPANY, LLC; LANDOAK
LEASING, LLC,

     Plaintiffs-Appellants,

       v.

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

     Defendant-Appellee.

On Appeal from the United
States District Court for the
Eastern District of Tennessee

——————————————————————————/

**Before:**     **GUY and ROGERS, Circuit Judges; DOWD, District Judge.**[*]

    **RALPH B. GUY, JR., Circuit Judge.**    Plaintiffs, BFM Leasing Company, LLC, and

LandOak Leasing, LLC, appeal from the district court's order granting defendant, Philadelphia

Indemnity Insurance Company, summary judgment on plaintiffs' claims for rescission or

performance of a commercial insurance policy. The district court ruled that it should not rescind

the insurance contract based on mutual mistake and that it should not order defendant to perform

because plaintiffs failed to properly tender its claims. We **AFFIRM**.

**I.**

---

    [*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

At the times relevant to this case, Jeff Coppinger was the president of Cherokee Rental, Inc. (Cherokee), which was in the business of renting and leasing automobiles in several cities in Eastern Tennessee. In 1997, Coppinger, on behalf of Cherokee, approached financial planners Michael Atkins and Patrick Martin with a business plan whereby Martin and Atkins would recruit capital and credit to purchase automobiles to lease to significant corporate accounts. BFM Leasing Company (BFM) was formed to carry out this plan. It was BFM's role to own the vehicles and Cherokee's role to recruit the customers, earning a commission on each new lease. Upon receiving certain paperwork from Coppinger, BFM would forward Coppinger funds to purchase certain vehicles. Coppinger would collect the lease payments from the customers and forward them to BFM. In March of 1997, BFM and Cherokee executed an Independent Business Agreement which formally defined their roles in the venture. In 1999, Martin and Atkins formed LandOak Leasing (LandOak) as a separate entity and began funding vehicles in the exact same way BFM had. While the parties never executed an agreement formalizing the relationship between LandOak and Cherokee, the parties intended the relationship to remain the same as it had been with BFM.

BFM purchased residual value insurance from Philadelphia Indemnity Insurance Company (PIIC) in 1997 and renewed it annually through August of 2000. Residual value insurance guarantees that the leased vehicles will have the expected residual value when they are returned at the end of a lease period. When BFM or LandOak received a title application and other paperwork from Coppinger, BFM would submit a vehicle enrollment application and premium check to PIIC. Over the course of the policy, BFM paid PIIC $325,570.58 and LandOak paid $52,424.91. PIIC insured approximately 761 vehicles.

Martin and Atkins became suspicious that Coppinger was not correctly performing his duties when the state of Tennessee failed to return some titles. They sent an accountant to Coppinger's

office to investigate, and soon after Coppinger confessed to perpetrating a fraud. Coppinger created fictitious title applications for vehicles he did not intend to purchase or for vehicles he did purchase but were titled to Cherokee and put to his own use. Coppinger collected funds from BFM to purchase the vehicles, and then used part of those funds to make the monthly lease payments. It is unclear when Coppinger began the scam; however, plaintiffs submitted to the district court a private investigator's report showing that some of the leases were legitimate. Also, Martin testified that "probably in the first year or two he was probably doing some leasing."

When BFM and LandOak informed PIIC that the enrolled vehicles were never leased as believed (and therefore not insurable), BFM and LandOak asked PIIC to return their premiums. PIIC refused. BFM and LandOak then submitted applications for benefits, but PIIC never responded. BFM and LandOak then filed suit seeking either rescission of the insurance contract and a full refund of all the premiums, or in the alternative seeking benefits from PIIC on the applications previously submitted. The district court granted PIIC summary judgment on both claims. It first found that BFM and LandOak were not entitled to rescind the contract based on mutual mistake because there was no mistake as to the terms of the contract. The court further held that PIIC did not have to pay benefits because BFM and LandOak did not (and could not) provide the documents required under the contract before PIIC was required to pay benefits and, further, the contract was not intended to insure against the type of loss incurred by BFM and LandOak. BFM and LandOak appeal, arguing that the district court erred in concluding that mistakes as to underlying material facts of a contract (as opposed to mistakes as to contract terms) are not grounds for rescission.

## II.

We review *de novo* the district court's grant of summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of

material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.      Count One:  Rescission of the Insurance Contract

Under Tennessee law, a contract may be rescinded if there is a mutual mistake. *Warren v. Crockett*, 364 S.W.2d 352, 355 (Tenn. 1962). A "mistake" is "an unconscious ignorance [or] forgetfulness of a fact, past or present, material to the contract, which exists in a legal sense where a person, acting upon some erroneous conviction either of law or fact, executes some instrument, does some act or omits to do some act which, but for the erroneous conviction, would not have been executed, done or omitted." *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 75 (6th Cir. 1985). "[T]he mistake must relate to a past or present fact, not an opinion as to the result of the known fact." *Metro. Life Ins. Co. v. Humphrey*, 70 S.W.2d 361, 362 (Tenn. 1934).

At summary judgment, the parties treated the mistake issue solely in terms of whether Coppinger was BFM's agent and, therefore, whether his knowledge of his fraud should be imputed to BFM. The district court rejected defendant's agency theory[1], but went on *sua sponte* to initiate the discussion of whether a mutual mistake occurred even though the parties agreed to the terms of the contract. BFM and LandOak argue that the district court erred when it decided there was no mutual mistake here because there was "a meeting of the minds as far as the contract terms are

_____

[1]The district court was correct that Coppinger's knowledge of the fraud should not be imputed to BFM and LandOak because "where the agent is dealing with the principal in his own interests or where his interests are adverse to that of the principal so that it is to his own advantage not to impart his knowledge to the principal," the principal will not be charged with the knowledge of the agent. *Griffith Motors, Inc. v. C.E. Parker*, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982).

concerned." They assert that even though the parties agreed to the terms of the contract, both parties suffered from a mistake of fact; namely, that there would be insurable cars.

Plaintiffs are correct that a mutual mistake of a material past or present fact may be grounds for rescission. *Id.* The district court erred insofar as it held that mistakes must go to the understanding of the terms of a contract and cannot be material facts underlying the contract. Nevertheless, there was no mutual mistake here because there was no mistake of material fact when the parties negotiated the policy. The parties mistakenly enrolled noninsurable cars after they formed the contract. Put another way, at the time the parties formed the contract, they were not mistaken as to a present fact. Rather, they mistakenly predicted future facts. Such a mistake is not grounds for rescission under Tennessee law. *Id.*

*Young America, Inc. v. Union Central Life Insurance Co.*, 101 F.3d 546 (8th Cir. 1996), does not persuade us to reach a different result. There, a business purchased life insurance policies for its officers. *Id.* at 547. The policy was governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (1994) (ERISA). *Id.* When the Chief Executive Officer died, the insurance company refused to pay benefits because he was not a full-time employee, as the policy required. *Id.* The business asked the insurance company to return all of its premiums since it was paying under the mistaken notion that certain part-time employees were covered by the policy, but the insurance company refused. *Id.* at 548. The business sued, and the district court granted it summary judgment, holding that the business was entitled to recover the premiums pursuant to ERISA federal common law. *Id.* The Eighth Circuit agreed that federal common law provided an action for restitution of mistakenly made payments to an ERISA plan. *Id.* The court further concluded that the district court was right to order restitution of the mistakenly made payments. *Id.* Since it appeared that at some point during the life of the policy the officers in question did work full time,

the case was remanded to the district court for determination of how many payments were made in error. *Id*. at 548-49.

*Young America* was decided under ERISA common law, which does not govern this case. Furthermore, the plaintiffs in *Young America* sought restitution of improperly made payments, not rescission of the entire contract based on a mistake at the formation of the contract.

BFM and LandOak also argue for the first time on appeal that Tennessee's "uninsurable interest" doctrine requires the court to rescind the insurance contract. Tennessee law provides "where a policy of insurance had been issued to one having no insurable interest therein, the policy is void, and ordinarily the person paying the premiums thereon can recover the same from the insurer." *Vinson v. Mills*, 530 S.W.2d 761, 763 (Tenn. 1975). Otherwise, the contract is essentially a wager and a violation of public policy. *Duncan v. State Farm Fire & Cas. Co.*, 587 S.W.2d 375, 376 (Tenn. 1979).

This court normally does not entertain arguments that parties make for the first time on appeal. *See, e.g., United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003). In this case, however, the district court decided the mutual mistake issue on a theory it applied to the case *sua sponte*, to which BFM and LandOak were not able to respond, and to which BFM and LandOak arguably would have presented this "uninsurable interest" argument in response. At summary judgment, the opposing party should have an opportunity to respond to all issues considered by the court. *Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989). If *sua sponte* summary judgment is improperly granted, the losing party must show prejudice. *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 436 (6th Cir. 1981). For the reasons explained below, even if plaintiffs had argued this issue in the district court it would have been unsuccessful, and therefore they suffered no prejudice.

In *Vinson*, the son of the owner of real property took out an insurance policy on the property. 530 S.W.2d at 763.[2] The insurance agent advanced the first premium, and when the son did not pay him back the agent sued to recover the advanced premium. *Id*. at 762. The defendant argued that he had no insurable interest in the property, and therefore the policy was void. *Id*. at 763. The Tennessee Supreme Court disagreed, holding that there was an insurable interest because the policy was issued to the holder of the mortgage, and the mortgage holder did have a valid insurable interest in the policy. *Id*.

In *Duncan*, the plaintiff purchased a tractor-trailer rig and also purchased a collision insurance policy from the defendant insurance company. 587 S.W.2d at 375. After the tractor was destroyed in a single-vehicle collision, the plaintiff filed a claim for the loss with the defendant insurance company. *Id*. The insurance company refused to pay the claim because the tractor had been stolen before the plaintiff purchased it, and the insurance company therefore believed the plaintiff had no insurable interest in the tractor. *Id*. The court first held that "one has an insurable interest in property if by its continued existence he will gain an advantage, or if by its damage or destruction he will suffer a loss, whether or not he has any title in, lien upon or possession of the property." *Id*. at 376. Applying that principle to a good faith purchaser of a stolen vehicle, the court held that the purchaser does have an insurable interest because the purchaser benefits from the continued use of the vehicle, and as a constructive bailee of the vehicle he may be liable to the true owner if the true owner demands its return but the good faith purchaser is unable to return it because it is destroyed. *Id*. *See also Oliver v. Johnson*, 692 S.W.2d 855, 857 (Tenn. Ct. App. 1985) (holding that the plaintiff had an insurable interest in real property); *Brewer v. Vanguard Ins. Co.*, 614

---

[2]The insurance policy included coverage for personal injury and property damage as well as comprehensive hazard insurance to the buildings and personal property.

S.W.2d 360, 364 (Tenn. Ct. App. 1980) (holding that the plaintiff had an insurable interest in her dwelling).

The critical question is what was the interest that plaintiffs insured. Unlike the cases discussed above, here the plaintiffs did not insure a thing, but rather insured against a contingent event—the residual value of the used cars being lower than the parties predicted. Plaintiffs did have an interest in that event not occurring as the success of their investment in the leases (some of which appear to have been legitimate) depended on the residual value of the vehicles at the leases' end. To have an insurable interest, it does not have to be a certainty that plaintiffs would sustain economic injury from the loss of the property, it is "sufficient that loss of the property might subject the insured to such injury." *Duncan*, 587 S.W.2d at 376. Plaintiffs had an insurable interest in the contingent event even if ultimately they could not collect on their claims because, when the time came, they lacked the proper documents.

## B.      Count Two:  Payment of Claims

As to BFM and LandOak's claim for benefits under the insurance policy, BFM and LandOak contend the district court erred in finding that PIIC was not required to pay benefits because it was impossible for BFM and LandOak to submit the paperwork necessary for claim as provided by the contract. The "MVP Settlement Endorsement Option" provides that to make a claim, plaintiffs must tender to PIIC a copy of the title to the enrolled vehicle, together with copies of the relevant sales or lease contract and the factory invoice for the vehicle. Plaintiffs argue that since PIIC was to calculate the lease-end value of the vehicle by reference to a trade publication, the requirement for them to provide actual titles and lease agreements would not preclude PIIC from calculating and paying the claims. Where, as in this case, the insured cannot provide any of the documents the

policy requires before the insurer pays benefits, the insurer should not be forced to pay out on the

claims.  The district court correctly granted PIIC summary judgment on this claim.

**AFFIRMED.**

**ROGERS, Circuit Judge, dissenting**.        Tennessee law clearly requires a refund of insurance premiums when no risk ever attached.  The law is reflected in an 1891 Tennessee Supreme Court case that has never been overruled and that is consistent with general insurance law.  *Jones & Abbott v. Insurance Co. of North America,* 18 S.W. 260, 260 (Tenn. 1891).  The case and its principle are the primary argument of the plaintiffs on appeal, yet the case is only cited in the defendant's brief for another proposition, which simply disregards the argument.  As a federal court sitting in diversity, we are bound to follow applicable state law, in this case Tennessee law.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Reversal is required by that law in this case.

The existence of at least a genuine issue of material fact about whether the vehicles at issue ever existed, or were ever insurable, is not disputed.  If the vehicles did not exist or were uninsurable for other reasons, PIIC did not incur the risk contemplated by the insurance policy—i.e. that the cars would have depreciated below a certain value by the end of the lease.  If no risk attached under a contract of insurance, no premium is earned, and under Tennessee law, premiums must be returned.

In *Jones & Abbott*, the Supreme Court of Tennessee considered an insurance policy by which the insurer purported to assumed the risk of fire to certain lumber.  *Jones & Abbott*, 18 S.W. at 260.  The policy contained a warranty stating that a space of 150 feet existed between the insured lumber and a nearby mill.  *Id.*  However, at the time the contract was entered, a space of 150 feet between the lumber and the mill did not exist.  *Id.*  Because the conditions necessary to make the contract effectual were never satisfied, the court found that no risk had attached to the insurer and accordingly, that the insured was entitled to a return of his premium.  *Id.*  The court explained that "[t]he contract of insurance is a conditional one.  If no risk attaches, no premium, in the absence of fraud, is earned.  When the risk never attached, and no risk was ever run, the premium is to be

returned in case it has been paid, and the assured was guilty of no fraud.  May on Ins. § 4." *Id.*[3]

*Jones & Abbott* has been followed by the Tennessee Court of Appeals in *Interstate Life & Accident Co. v. Cook*,  86 S.W.2d 887, 890-91 (Tenn. App. 1935).

The *Jones & Abbott* principle moreover appears fully consistent with general insurance law. Insurance is a contract whereby insurance premiums are paid to an insurer in return for the insurer's assumption of the risk .  *See* 28 Williston on Contracts § 70:255.  However, "[w]here the risk has not attached or where no part of the interest insured is exposed to any of the perils insured against, the insurer, in the absence of any fault or fraud on the part of the insured, has no claim to the premium, and must return it."  5 Couch on Ins. § 79:8; *see also* 28 Williston on Contracts § 70:255 ("if no risk attaches, the premium may be recovered"); 14 Williston on Contracts § 41:21 ("where the risk never attaches, the reason for requiring a surrender of the premium by insurer is apparent"). A comprehensive annotation published in 1940 cites cases from 23 American jurisdictions indicating that, absent fraud, premiums are to be returned where the insurance policy was void, even though the contract was not contrary to public policy.  129 A.L.R. 57, 60-63 (1940).

A relatively recent North Carolina case applied this law in circumstances very similar to those of the present case.  *Latta v. Farmers County Mutual Fire Ins. Co.*, 313 S.E.2d 214 (N.C. Ct. App. 1984).  In *Latta*, the plaintiff sought to recover premiums paid to an insurance company for crop insurance.  No risk had ever attached under the policy because, at the time the plaintiff entered into the contract for insurance, the plaintiff had Federal Crop Insurance and, unbeknownst to the

---

[3]The cited treatise explains as follows:

> [Insurance is] a conditional contract; for when no risk attaches no premium is to be paid, or, if paid, must, in the absence of fraud, be returned to the assured.  In point of fact, the contract is to pay the premium on condition that the risk is run . . . ."

John Wilder May, THE LAW OF INSURANCE § 4, at 3-4 (1873) (footnote omitted).

plaintiff, a clause in the insurance contract suspended coverage in the event the insured has or obtains Federal Crop Insurance. *Id*. at 215. The court found it inapposite that the defendant was at all times "'ready, able and willing' to perform, provided the plaintiff complied with the terms of the agreement," because the insurance company was never at risk under the policy. The court stated that "[i]t is an established principle of insurance law that an insurer must return premiums where, without fault or fraud by the insured, no risk to the insurer ever attaches under the policy. *Id.* at 216. In such a case, the premiums have been paid upon a consideration which has failed." *Id.* at 215-216. Therefore, the court found the plaintiff was entitled to a return of the premiums paid. *Id.* at 216.

It follows inexorably that BFM and LankOak are entitled under Tennessee law to a return of premiums paid because PIIC was never at risk under the insurance contract. The policy at issue in this case was for residual value insurance. Residual value insurance insures that, at the end of a long-term lease, the insured automobile will have a certain value. However, BFM and LandOak have established a genuine question of fact about whether the cars purportedly enrolled under the insurance policy ever existed or were leased in accordance with the eligibility requirements of the policy. If the cars never existed or did not meet the eligibility requirements of the policy, PIIC did not incur the risk contemplated by the parties—that the cars would be worth less than a specified amount—because the cars were never actually insurable. The district court and the majority opinion both agree that BFM and LankOak were innocent of any fraud in the situation.[4] The grant of summary judgment should therefore be reversed.

It is true that *Jones & Abbott* does not appear to have been cited by plaintiffs to the district court. The complaint did state, however, that "Defendant incurred no risk of loss," J.A. 8, that the

---

[4]Both the district court and the majority opinion agree that the perpetrator of the fraud, Jeff Coppinger, was an independent contractor of BFM and LandOak. Accordingly, Coppinger's fraud is not properly imputed to BFM and LandOak.

contract was "void initiato [sic]," and that plaintiffs are "entitled to a refund of [the] premiums." J.A. 9. While these allegations were made in the context of "mutual mistake," they nonetheless sufficiently plead a claim that the premiums should be returned on the *Jones & Abbott* principle. *See Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004) ("legal theories of recovery need not be spelled out as long as the relevant issues are sufficiently implicated in the pleadings"). The summary judgment motion papers did not treat the question of whether, assuming plaintiffs had no knowledge that the automobiles did not exist, the premiums should be refunded. Instead, the summary judgment motions dealt with whether such knowledge should have been attributed to the plaintiffs. See majority opinion at fn. 1. With regard to the claim for refund of premiums, defendant's memorandum in support of summary judgment was based entirely on the argument that "there was no mutual mistake because BFM Leasing knew, through their agent's knowledge, that the cars did not exist at the time the policies were issued." J.A. 35, 37-38. The district court ruled *against* defendant on this issue, but ruled in favor of defendant on another basis—one that, it turns out, was contrary to Tennessee law. Where summary judgment is granted on an unanticipated legal theory, it makes little sense to prevent a party from refuting the theory for the first time on appeal. *See Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989) (noting that the party opposing summary judgment must have "a reasonable opportunity to respond to all issues to be considered by the court").

Moreover, the fact that plaintiffs on appeal cited some cases involving insurance contracts that were void as against public policy should not be construed to limit plaintiffs' argument to cases regarding "insurable interest." The *Jones & Abbott* principle is broader: if no risk attached, premiums must be refunded, absent fraud. It does not matter whether risk did not attach because of

the lack of insurable interest, as was argued in *Vinson*, or because it was impossible for the insured

event to occur, as in this case and as in *Jones & Abbott*.[5]

It should make no difference whether the *Jones & Abbott* principle is based on a theory of

lack of consideration, or on a theory of mutual mistake.[6] Whichever theory the principle is based

on, it is controlling here. Even assuming, however, that plaintiffs are limited to a theory of mutual

mistake, the plaintiffs should succeed. The plaintiffs have demonstrated a mutual mistake of the

parties about a material fact underlying the contract—the existence or insurability of the cars. It is

no answer that the parties were not, at the time they formed the contract, mistaken as to a present

fact. Contract formation often involves a master agreement and subsequent implementing

agreements. *See Gregg v. Transportation Workers of America International*, 343 F.3d 833 (6th Cir.

2003) (life insurance); *Beynon v. Garden Grove Medical Group*, 100 Cal. App. 3d 698 (Cal. Ct.

App. 1980) (health insurance). The master agreement in this case provided insurance only with

respect to "Enrolled Vehicles," and a vehicle was enrolled only following the submission of an

Enrollment Form, in duplicate, along with a corresponding premium payment, plus acceptance and

certification by the insurance company of the Enrollment Form. J.A. 67-68. Nothing about the

*Jones & Abbott* principle applies with less force when insurance contracts are structured in this way.

At some point the mutual obligations of premium payment and risk undertaking ostensibly went into

force (presumably when the Enrollment Form was accepted). At that point, with respect to cars that

---

[5]Indeed, in a case arising out of Tennessee this court specifically read the *Jones & Abbott* principle to be applicable where "the contract was not against law or public morals." *Georgia Home Ins. Co. v. Rosenfield*, 95 F. 358, 363 (6th Cir.1899). *See also* Annotation, 129 A.L.R. 57, 60-63 (1940).

[6]It appears to be the former. See n. 1, *supra*.

did not exist or were not otherwise insurable, no risk attached.  At that point the *Jones & Abbott* principle accordingly required a return of premiums.

Of course, public policy may not support the *Jones & Abbott* rule.  Insurance companies may incur unnecessary costs of administration, and may have to maintain unnecessary reserves or buy unnecessary reinsurance as a result of risk that the insurance companies reasonably believe to exist. Sound policy may suggest that this cost should be borne by the insured, by allowing the insurance company to keep the premiums, since the insured is in a better position than the insurance company to know whether the risk has attached.  We are however nonetheless bound by Tennessee law, which is clearly to the contrary.

Accordingly, I respectfully dissent.