IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 6, 2025 Session

## 731 REAL ESTATE GROUP, LLC D/B/A TOWN & COUNTRY REALTORS v. JOSEPH T. FUZZELL

**Appeal from the Circuit Court for Haywood County**
**No. 2023-CV-451    Clayburn Peeples, Judge**

———————————————

**No. W2024-01053-COA-R3-CV**

———————————————

Appellant, homeowner, appeals the trial court's grant of Appellee, real estate company's, motion for summary judgment on its breach of contract claim arising from Appellant and Appellee's contract for the sale of Appellant's property.  After the expiration of the initial period of the listing agreement, Appellant transferred the property by quitclaim deed to himself and another party. Appellee sought compensation under the contract.  Appellant failed to respond to Appellee's requests for admissions, and the trial court deemed the requests for admissions admitted.  Appellant also failed to respond to Appellee's motion for summary judgment, and Appellee's statement of material facts for purposes of summary judgment was undisputed.   Despite the admitted facts, the trial court erred in finding that Appellant breached the plain language of the contract.  Because Appellee was not entitled to summary judgment as a matter of law, we reverse and remand.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and VALERIE L. SMITH, JJ., joined.

Cory Hancock, Jackson, Tennessee, for the appellant, Joseph T. Fuzzell.

Adam C. Crider and Craig P. Sanders, Jackson, Tennessee, for the appellee, 731 Real Estate Group, LLC d/b/a Town & Country Realtors.

## OPINION

### I. Background

On October 6, 2022, Appellant Joseph T. Fuzzell and his then wife, Twila Johnson,

entered into an Exclusive Right to Sell Listing Agreement (the "Contract") with Appellee, 731 Real Estate Group, LLC d/b/a Town & Country Realtors, for the sale of their home. Under the Contract, the listing expired on April 14, 2023. The Contract designated Debra Ann Kee as the listing agent and provided that Appellee would receive a six percent (6%) commission upon the sale or exchange of the property. The original listing price was $379,900.00; the parties reduced that to $299,900.00, after which they received a purchase offer of $290,000.00. Ms. Kee presented Mr. Fuzzell and Ms. Johnson with the offer in the form of a Purchase and Sale Agreement. However, at that time, Mr. Fuzzell and Ms. Johnson were in the midst of a divorce. Although Ms. Johnson was willing to accept the offer and sign the Purchase and Sale Agreement, Mr. Fuzzell refused the offer, which was $9,900.00 less than the reduced listing price.

In the divorce proceedings, the parties agreed that Mr. Fuzzell would acquire Ms. Johnson's interest in the property and be solely responsible for "all . . . real estate commissions, fees, expenses, taxes and any other money owed regarding the marital home . . . ." On or about April 17, 2023, Ms. Johnson executed a quitclaim deed transferring her interest in the property to Mr. Fuzzell. After acquiring his ex-wife's interest, on April 17, 2023, Mr. Fuzzell executed a quitclaim deed, transferring ownership of the property to himself and Donna Shumaker. Following this transfer, Appellee sought a commission pursuant to the Contract. Mr. Fuzzell denied that Appellee was entitled to a commission, and the instant lawsuit ensued.

On July 17, 2023, Appellee filed suit against Mr. Fuzzell for breach of contract. The lawsuit was filed in the Haywood County General Sessions Court. The general sessions court entered a default judgment against Mr. Fuzzell in the amount of $20,880.00 plus costs and interest based on his failure to appear at the scheduled hearing. Mr. Fuzzell appealed to the Haywood County Circuit Court ("trial court").

In the trial court, Appellee served Mr. Fuzzell with requests for admissions on September 19, 2023. Mr. Fuzzell did not respond in full to these requests. Rather, he provided partial responses well after the deadline for responses had passed. Appellee filed a motion to deem the requests for admissions admitted, along with a motion for summary judgment. Mr. Fuzzell failed to respond to these motions.

By order of March 11, 2024, the trial court granted Appellee's motion to declare the requests for admissions admitted. By the same order, the trial court also granted Appellee's motion for summary judgment. The trial court awarded Appellee $17,400.00 in commission, plus attorney's fees and costs under the Contract. Appellee submitted attorney's fee affidavits, and Mr. Fuzzell filed a Tennessee Rule of Civil Procedure 59.04 motion asking the trial court to alter or amend its March 11, 2024 decision. Appellee opposed the motion. By order of July 25, 2024, the trial court denied Appellant's Rule 59.04 motion and awarded Appellee an additional $9,071.74 in attorney's fees and costs. Appellant appeals.

## II. Issues

Appellant raises the following issues as stated in his brief:

a. Whether the Trial Court committed an abuse of discretion by deeming Appellee's Request for Admissions admitted for Appellant failing to timely respond or respond when the Trial Court had not ordered the parties to engage in discovery and Appellant was not required to respond to discovery request because the case was an appeal from the General Sessions Court?

b. Whether the Trial Court erred by granting Appellee's Motion for Summary Judgment even if Appellee's facts are deemed admitted? (Is a Seller liable to a real estate broker when the real estate broker brings an offer that is $9,000 less than the agreed upon sale price?)

Appellee asks for an award of appellate attorney's fees and costs on the ground of frivolous appeal.

## III. Standard of Review

The trial court granted Appellee's motion for summary judgement. A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is de novo with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W. 2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Green v. Green***, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim, or (2) by demonstrating that the nonmoving party's evidence at the summary-judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus.***

- 3 -

*Co.*, [***Ltd. v. Zenith Radio Corp.***], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye***, 477 S.W.3d at 265.

## IV. Requests for Admissions

Before addressing the propriety of the trial court's decision to deem Appellee's requests for admissions admitted, we first address Appellant's contention that he was not obligated to respond to discovery (or to the motion for summary judgment) because the Tennessee Rules of Civil Procedure do not apply in cases where the action originated in general sessions court. Tennessee Code Annotated section 27-5-108 provides that any party may appeal from an adverse decision of a general sessions court to the circuit court of the county. This appeal must be filed within ten days, and the circuit court must review the issues raised in the appeal de novo. Tenn. Code Ann. § 27-5-108(c). In conducting its de novo review, the circuit court must try the matter "as if no other hearing had occurred" and render judgment "as if no judgment had previously been rendered." ***State v. Cunningham***, 972 S.W.2d 16, 18 (Tenn. Crim. App. 1998). Concerning the applicability of the Tennessee Rules of Civil Procedure in appeals from general sessions to circuit, Tennessee Rule of Civil Procedure 1 provides, in part, that, "The Rules of Civil Procedure shall not apply to general sessions courts **except** as follows . . . (2) The rules **shall** apply after appeal or transfer of a general sessions civil lawsuit to circuit court . . ." (emphases added). Although the Tennessee Rules of Civil Procedure govern the proceedings in circuit court following a de novo appeal from general sessions court, plaintiffs appealing from a general sessions court judgment need not "replead their action, reissue process or take any other retrospective step, once a case is appealed from a general sessions court to a circuit court." ***Vinson v. Mills***, 530 S.W.2d 761, 765 (Tenn.1975). This principle also applies to defendants. ***Graham v. Caples***, 325 S.W.3d at 583 (holding that a defendant was not required to replead a motion to dismiss in circuit court that had been filed in the general sessions court). Although "the Rules do not require the filing of written pleadings, issuance of new process, or any other steps which have been completed prior to the appealing of the case to the circuit court," ***Vinson***, 530 S.W.2d at 765, parties to a de novo appeal from general sessions to circuit court are not relieved from following the Tennessee Rules of Civil Procedure when they come into the circuit court. As the Tennessee Supreme Court has held, the Tennessee Rules of Civil Procedure "govern civil actions appealed to the circuit court" and are given "full effect" upon a de novo appeal from general sessions court. ***Ware v. Meharry Medical College***, 898 S.W.2d 181, 186 (Tenn. 1995). Accordingly, Appellant's argument that the Tennessee Rules of Civil Procedure are inapplicable because the case originated in general sessions court is without merit.

Concerning a party's failure to respond to requests for admissions, this Court has

explained that,

> [p]ursuant to Tennessee Rule of Civil Procedure 36.01, requests for admission that are not timely and appropriately answered will be deemed admitted. Tenn. R. Civ. P. 36.01 ("The matter is admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney[.]"). . . . Any matter so admitted is then considered "conclusively established" for the purposes of the pending action unless the trial court exercises its discretion to permit withdrawal or amendment of the admission. Tenn. R. Civ. P. 36.02; *see also Meyer Laminates (SE), Inc. v. Primavera Distrib., Inc.*, 293 S.W.3d 162, 166 (Tenn. Ct. App. 2008) . . . . Indeed, "[n]o proof is needed to establish a fact that has been admitted, and no evidence should be allowed to refute the admission." *Hutcheson v. Irving Materials, Inc.*, No. M2002-03064-COA-R3-CV, 2004 WL 419722, at *3 (Tenn. Ct. App. Mar. 8, 2004) (citing *Tennessee Dep't of Human Servs. v. Barbee*, 714 S.W.2d 263, 267 (Tenn. 1986)). And unless the trial court allows the admission to be withdrawn or amended, the admittance "concludes the matter and avoids any need for proof at trial." *Id*. Furthermore, a trial court's decision to deem requests for admission admitted, as a pre-trial discovery matter, is within the trial court's sound discretion. *Ruff v. Raleigh Assembly of God Church, Inc.*, No. W2001-02578-COA-R3-CV, 2003 WL 21729442, at *4 (Tenn. Ct. App. July 14, 2003) (citing *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992)). "As such, these decisions will not be overturned by an appellate court unless the trial court clearly abused its discretion." *Id*. (citing *Benton*, 825 S.W.2d at 416).

*State v. Delinquent Taxpayers of Benton Cty. Tennessee*, No. W2021-01050-COA-R3-CV, 2022 WL 17491300, at *6 (Tenn. Ct. App. Dec. 7, 2022) (footnote omitted).

We review a trial court's decisions concerning discovery and the admission or exclusion of evidence under an abuse of discretion standard. *Lundell v. Hubbs*, No. E2019-02168-COA-R3-CV, 2020 WL 6867229, at *5 (Tenn. Ct. App. Nov. 23, 2020) (citing *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005)). "[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005).

In holding that Appellee's requests for admissions would be admitted, the trial court explained the discovery timeline as follows:

> [Appellee] sent discovery requests, including requests for admission, to [Appellant's] counsel by mail on September 19, 2023. Without any request

from [Appellant], [Appellee] gave an extra two weeks to respond to the requests. After receiving no response from [Appellant] . . . [Appellee] filed the Motion[] on November 6, 2023 with this Court. No response was filed with the Court by [Appellant] to [Appellee's] Motion to Deem Requests for Admission Admitted. [Appellant] never requested from [Appellee] nor the Court any extension to answer the requests for admission. While [Appellant] did send partial responses to the requests for admission to [Appellee] on January 31, 2024 (via email), [Appellant] failed to respond to requests 3-8 and alleged that he did not receive them.

[Appellee's] counsel sent an email to [Appellant's] counsel the same day and advised that it was the first he had heard of any missing page to the requests for admission. [Appellee's] counsel also noted in the email that the full copy was attached to the Motions, which [Appellant] had since November 6, 2023, and attached an additional copy to the email with a request to answer the same. [Appellant] never responded to requests 3-8 with the requests for admission.

The record supports the trial court's timeline. Concerning Appellant's failure to respond to Appellee's requests for admissions, the trial court found that:

[Appellant] provided no sufficient reason for the failure to timely and properly respond to the requests for admission . . . . [Appellant's] counsel argued that he was busy and that his client was in and out of town to where he did not have an opportunity to properly respond despite the fact that discovery had been sent on September 19, 2023, and the Motion[] had been filed since November 6, 2023.

Furthermore, [Appellant's] counsel argued that he was not required to respond to the Requests . . . because the underlying case originated in Haywood County General Sessions Court.

The trial court concluded that

the [Appellant] had from September 19, 2023 (plus three days for mail) to respond to the Requests. [Appellant] only partially responded to the Requests by January 31, 2024, which was 101 days past the 30 day deadline provided in Rule 36.01. Moreover, [Appellant's] counsel admitted that he still had not responded to the alleged missing page 2 (requests 3-8) despite [Appellee's] counsel stating that the same were mailed on September 19, 2023, that they were attached to the Motion[], and that the same were emailed to [Appellant's] counsel on January 31, 2024. No sufficient reason was provided for the improper delay in responding to the requests for admission.

Having concluded that the Tennessee Rules of Civil Procedure govern the proceedings in the trial court, Appellant was required to file an answer to the requests for

admissions or risk them being admitted. Tenn. R. Civ. P 36.01. The record supports the trial court's findings that there was no legitimate excuse for Appellant's failure to respond to Appellee's filings. As such, we conclude that the trial court did not abuse its discretion or otherwise err in deeming the following requests for admissions admitted:

REQUEST FOR ADMISSION NO. 1: That on approximately October 8, 2022, you [Appellant] and Twila Johnson (f/k/a Twila Fuzzell) signed an Exclusive Right to Sell Listing Agreement ("Listing Agreement') with [Appellee] with regard to 453 Wellwood Road, Bells, TN ("Property").

REQUEST FOR ADMISSION NO. 2: Admit that Debra Kee, a realtor with [Appellee], was your realtor to sell the Property.

REQUEST FOR ADMISSION NO. 3: Admit that the Listing Agreement provides that [Appellee] was entitled to a six percent (6%) commission upon the sale or transfer of the Property.

REQUEST FOR ADMISSION NO. 4: Admit that the Listing Agreement had a term of April 14, 2023 with a ninety (90) day carry-over clause.

REQUEST FOR ADMISSION NO. 5: Admit that the Listing Agreement had an original listing amount of $379,900.00.

REQUEST FOR ADMISSION NO. 6: Admit that you approved the original listing price being reduced with Debra Kee and/or [Appellee] to $299,900.00.

REQUEST FOR ADMISSION NO. 7: Admit that Debra Kee presented you a Purchase and Sale Agreement for $290,000.00 ("Purchase Agreement") with regard to the Property.

REQUEST FOR ADMISSION NO. 8: Admit that you refused to sign the Purchase Agreement.

REQUEST FOR ADMISSION NO. 9: Admit that you were married to Twila Johnson (f/k/a Twila Fuzzell).

REQUEST FOR ADMISSION NO. 10: Admit that you declined to sign the Purchase Agreement because you were going through a divorce with Twila Johnson (f/k/a Twila Fuzzell).

REQUEST FOR ADMISSION NO. 11: Admit that you signed a Consent Order, dated February 23, 2023, entered with the Haywood County Chancery Court (docket number 2021-CH-53), in which you agreed that "all other costs, real estate commissions, fees, expenses, taxes and any other money owed regarding the marital home [the Property] shall be the sole responsibility of Joseph Fuzzell."

REQUEST FOR 4DMISSION NO. 12: Admit that on or about April 17, 2023, that Twila Johnson (f/k/a Twila Fuzzell) executed a Quitclaim Deed to the Property to you.

REQUEST FOR ADMISSION NO. 13: Admit that on or about April 17, 2023, you executed a Quitclaim Deed to the Property to yourself and Donna Schumaker.

REQUEST FOR ADMISSION NO. 14: Admit that you have paid no commissions to [Appellee] with the transfer of the Property.

- 7 -

REQUEST FOR ADMISSION NO. 15: Admit that the Listing Agreement provides for the recovery of attorney fees and court costs with enforcement of the obligations of the Listing Agreement:

## V. Breach of Contract

As noted in the trial court's order granting Appellee's motion for summary judgment, Appellant did not file a response to the motion and did not object to Appellee's statement of undisputed material facts filed in support of its motion, to-wit:

[N]o response was filed by the [Appellant] to the [Appellee's] Motion for Summary Judgment. While [Appellant] did send a draft of a Response to [Appellee's] Statement of Undisputed Facts for [Appellee's] Motion for Summary Judgment to [Appellee's] counsel by email on January 31, 2024, [Appellant] did not file the same with the Court. As such, there was no response properly filed pursuant to Tenn. R. Civ. P. 56.03. [Appellant] did not submit any additional facts for the Court to consider that may have been at issue with the case by any paper filing or even in his argument before the Court.

***

[P]ursuant to Tenn. R. Civ. P. 56.03, [Appellant] failed to respond properly to [Appellee's] Statement of Undisputed Facts. . . . [Appellant] did not provide any separate statement of undisputed facts for the Court to consider that might be material and at issue.

We have previously explained that the Tennessee Rules of Civil Procedure govern the trial court proceedings. As such, Appellant was required to comply with the mandates of Tennessee Rule of Civil Procedure 56 relating to motions for summary judgment. In ***Holland v. City of Memphis***, 125 S.W.3d 425 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. Dec. 22, 2003), this Court explained:

Courts consistently have emphasized that a party opposing a motion for summary judgment may not simply rest on its pleadings, but must affirmatively oppose the motion. Such opposition may be made by pointing to the evidence in the record which indicates disputed material facts. Rule 56.03 requires that a party opposing a motion for summary judgment must serve and file a response to the motion.

The statements of material facts submitted by the parties on a motion for summary judgment are "intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant

information from the record on its own" . . . . Thus, the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party. Accordingly, failure to file a response in opposition to a motion for summary judgment generally will prove fatal in the trial court and upon appeal.

*Holland*, 125 S.W.3d at 428 (citations omitted). Here, Appellant failed to respond to Appellee's statement of undisputed material facts filed in support of its motion for summary judgment. As such, the trial court did not err in deeming Appellee's statement of material facts admitted. Those facts include the following:

1. On approximately October 8, 2022, Joseph Fuzzell ("[Appellant]") and Twila Johns6n (f/k/a Twila Fuzzell) signed an Exclusive Right to Sell Listing Agreement ("Contract") with [Appellant] with regard to 453 Wellwood Road, Bells, Tennessee (the "Subject Property").

2. Debra Kee, a realtor with [Appellee], was [Appellant's] realtor to sell the Subject Property.

3. The Contract provides that [Appellee] was entitled to a six percent (6%) commission upon the sale or transfer of the Subject Property.

4. The Contract was to terminate on April 14, 2023 with a ninety (90) day carryover clause.

5. The Contract had an original listing amount of $379,900.00.

6.. Defendant approved the original listing price being reduced with Debra Kee and/or Plaintiff to $299,900.00.

7. Debra Kee presented Defendant with a Purchase and Sale Agreement for $290,000.00 ("Purchase Agreement") with regard to the Subject Property.

8. Defendant refused to sign the Purchase Agreement.

9. Defendant was married to Twila Johnson (f/k/a Twila Fuzzell).

10. Defendant declined to sign the Purchase Agreement because he was going through a divorce with Twila Johnson (f/k/a Twila Fuzzell).

11. Defendant signed a Consent Order, dated February 23, 2023, entered with the Haywood County Chancery Court (docket number 2021-CH-53), in which he agreed that "all other costs, real estate commissions, fees, expenses, taxes and any other money owed regarding the marital home [the Property] shall be the sole responsibility of Joseph Fuzzell."

12. On or about April 17, 2023, Twila Johnson (f/k/a Twila Fuzzell) executed a Quitclaim Deed to the Subject Property to Defendant.

13. On or about April 17, 2023, [Appellant] executed a Quitclaim Deed to the Subject Property to himself and Donna Schumaker.

14. The Contract provides for the recovery of attorney fees and court costs with enforcement of the obligations of the Contract.

Although we conclude that the trial court did not err in admitting the foregoing facts as conclusive, the mere admission of these facts does not, *ipso facto*, require the grant of

the motion for summary judgment. Rather, the court must determine whether, under the admitted facts, the moving party is entitled to judgment **as a matter of law**. Tenn. R. Civ. P. 56.04 (". . . "[Summary] judgment shall be rendered . . . if the . . . admissions . . . show that there is no genuine issue as to any material fact **and** that the moving party is entitled to a judgment as a matter of law."). Here, we have affirmed the trial court's decision to deem Appellee's requests for admissions admitted under Tennessee Rule of Civil Procedure 36, and these facts are conclusive. However, the summary judgment inquiry also requires a determination that Appellee is entitled to summary judgment as a matter of law. Here, that inquiry requires us to determine whether the Appellant breached the terms of Contract. We turn to that question.

When a contract is not ambiguous, its interpretation is a question of law that is appropriate for summary judgment. ***Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton***, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012) ("Questions of contract interpretation are generally considered to be questions of law and, thus, are especially well-suited for resolution by summary judgment.") (citing ***Ross Prods. Div. Abbott Labs. v. State***, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2 (Tenn. Ct. App. Dec. 5, 2007), *perm. app. denied* (Tenn. April 28, 2008)).

When interpreting a contract, our task "'is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy.'" ***Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.***, 78 S.W.3d 885, 890 (Tenn. 2002) (quoting Empress ***Health & Beauty Spa, Inc. v. Turner***, 503 S.W.2d 188, 190 (Tenn. 1973) (quoting 17 Am. Jur. 2d., Contracts, § 245)). Courts ascertain the parties' intent by considering "'the usual, natural, and ordinary meaning of the contractual language.'" ***Id.*** at 889-90 (quoting ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999)). If the contractual language is clear and unambiguous, "the literal meaning of the language controls," and the determination of the parties' intent "is generally treated as a question of law because the words of the contract are definite and undisputed," leaving no genuine factual issue for a court or jury to decide. ***Id***. at 890 (citing 5 Joseph M. Perillo, Corbin on Contracts, § 24.30 (rev. ed. 1998); ***Doe v. HCA Health Servs. of Tenn., Inc.***, 46 S.W.3d 191, 196 (Tenn. 2001)).

The relevant provisions of the parties' Contract provide:

**Carry-Over Clause**. Should the Seller contract to sell or exchange, or contract to lease the Property within 90 days after the Listing Expiration Date of this Agreement to any Buyer/Tenant (or anyone acting on Buyer's/Tenant's behalf) who has been introduced to the Property, directly or indirectly, during the term hereof, as extended, the Seller agrees to pay the compensation as set forth below. This includes but is not limited to any introduction or exposure to the Property by advertisements or postings appearing in any medium which originated as a result of listing the Property with Broker. . . .

***

**COMPENSATION**:

A total of . . . 6 % compensation based on the total sales price which shall be paid by Seller to Broker . . . on the date of closing of Property as evidenced by delivery of warranty deed and payment of purchase price which includes, but is not limited to, payment of purchase price in full, execution of a 1031 exchange, execution of a deed of trust, or execution of a promissory note (the "Closing").

In its order granting Appellee's motion for summary judgment, the trial court neither cites, nor discusses the foregoing provisions of the Contract. Rather, having admitted Appellee's statement of undisputed material facts, the trial court merely concludes:

Therefore, the Court finds that there are no undisputed facts and that [Appellee] has met its burden of proof to show a breach of contract by the [Appellant]. Specifically, the Court finds that there was an enforceable contract in existence between [Appellee] and [Appellant], that there was nonperformance on the part of the [Appellant] for failing to pay the commission upon the transfer of the subject property, and that [Appellee] suffered damages as a result of the breach. As such, the Court finds that summary judgment in favor the [Appellee] is appropriate as a matter of law.

Under the plain language of the Contract, Appellant's obligation to pay the 6% commission is triggered by the occurrence of one of two things. Under the "Carry-Over Clause," such obligation would arise if Appellant "contract[ed] to sell or exchange . . . to any Buyer . . . who has been introduced to the Property." Here, the undisputed facts and admissions do not establish either that Ms. Shumaker was a "buyer," or that she was "introduced to the property" by Appellee. The fact that Ms. Shumaker was not introduced to the property by Appellee negates any obligation on Appellant's part to pay the commission under the Carry-Over Clause. Nonetheless, Appellee argues that the $290,000.00 offer from a potential buyer was a "bonafide offer that Mr. Fuzzell refused to consider in light of his divorce proceedings." In the first instance, the $290,000.00 offer was $9,900.00 below the asking price, which had already been reduced from $379,900.00 to $299,900.00. Appellee cites no authority, nor have we found any, that would require a seller to take an offer below asking price, so Mr. Fussell's refusal to do so cannot form the basis of a breach of contract claim. Even though the $290,000.00 offer was not accepted, and no contract was entered for that amount, it appears that the trial court based its judgment on that sale price and awarded Appellee a $17,400.00 judgment, which is 6% of $290,000.00. There is no provision in the Contract that would support such award.

Turning to the "Compensation" provision of the Contract, Appellant may also be

- 11 -

obligated to pay the 6% commission if a "Closing" occurs, *i.e.* the compensation "shall be paid . . . on the date of closing . . . ." A "Closing" is the condition precedent upon which Appellant's obligation rests. The Contract goes on to define two criteria that must be met to "evidence[]" a closing. First, there must be "delivery of [a] warranty deed." That was not done here. Appellant received his interest in the property from his ex-wife by quitclaim deed, and he executed a quitclaim deed in favor of himself and Ms. Shumaker. In Tennessee, a warranty deed and a quit claim deed are not one-and-the-same and, so, are not interchangeable. "A warranty deed to land conveys property, while a quitclaim deed conveys the grantor's rights in that property, if any, without warranty." 26A C.J.S. Deeds § 328; *see **McQuiddy Printing Co. v. Hirsig***, 134 S.W.2d 197 (Tenn. Ct. App. 1939), *perm. app. denied* (Tenn. Dec. 16, 1939). Accordingly, because the parties' Contract requires delivery of a "warranty deed," we cannot conclude that the delivery of a quitclaim deed satisfies this requirement.

In addition to the "delivery of a warranty deed," for Appellant to be obligated to pay the 6% commission, there must also be "payment of [the] purchase price." The second criterion, *i.e.* "payment of the purchase price" includes: (1) "[p]ayment of the purchase price in full"; (2) "execution of a 1031 exchange," *i.e.*, a like-kind exchange; (3) "execution of a deed of trust"; or "execution of a promissory note." Under the admitted facts, none of these conditions occurred in this case. No deeds, quitclaim or otherwise, were executed during the listing period, which expired on April 14, 2023. Also, the "Carry-Over Clause" was not triggered by any of the admissions or by Appellee's statement of undisputed material facts. Furthermore, despite the trial court's reliance on the $290,000.00 offer, there was no payment of a purchase price in this amount; in fact, there was no money exchanged at all. Moreover, there was no deed of trust, no promissory note, and no warranty deed. In short, there was no "Closing" as defined by the Contract. Because a "Closing" is the triggering event, *i.e.,* the condition precedent, for Appellant's obligation to pay Appellee's commission, the obligation never arose in this case. As this Court has explained,

> the plaintiff must prove that the condition precedent was satisfied in order to establish that the defendant's liability was triggered under the contract. *See* 29 Am. Jur. 2d Evidence § 140 (1967). There is no right of action or liability until an "obligation to pay matures upon the happening of the condition, event, or contingency." 11 Am. Jur. 2d Bills and Notes § 289 (1963); *See **Douglas v. Bank of Commerce***, 97 Tenn. (13 Pick.) 133, 36 S.W. 874 (1896).

***McReynolds v. Am. Progressive Corp.***, No. 01-A-019008CH00300. 1991 WL 24891, at *5 (Tenn. Ct. App. March 1, 1991). Under the admitted and conclusive facts, the conditions precedent to trigger Appellant's obligation to pay Appellee's commission were not satisfied, thus Appellant's obligation to pay Appellee's commission did not arise, and there was no breach of contract. Accordingly, Appellee's were not entitled to judgment as a matter of law.

Having reversed the trial court's grant of summary judgment, we deny Appellee's request for frivolous appeal damages.

## VI. Conclusion

The trial court's order granting summary judgment to Appellee is reversed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, 731 Real Estate Group, LLC d/b/a Town & Country Relators. Execution for costs may issue if necessary.


s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

- 13 -